IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 04–cv–00909–EWN–MJW

QWEST CORPORATION,

    Plaintiff/Counterclaim Defendant,

v.

AT&T CORP.,
AT&T COMMUNICATIONS, INC.,
AT&T COMMUNICATIONS OF THE PACIFIC NORTHWEST, INC.,
AT&T COMMUNICATIONS OF THE MIDWEST, INC.,
AT&T COMMUNICATIONS OF THE MOUNTAIN STATES, INC., and
AT&T COMMUNICATIONS OF THE SOUTHWEST, INC.,

    Defendants/Counterclaim Plaintiffs.

---

**ORDER AND MEMORANDUM OF DECISION**

---

This is a telecommunications case. Plaintiff and Counterclaim Defendant Qwest Corporation (hereinafter "Qwest") alleges that Defendants and Counterclaim Plaintiffs, AT&T Corporation and its various subsidiaries (hereinafter "AT&T" in the singular), used a system named phone-to-phone IP telephony in order to avoid paying access charges as set forth in Qwest's federal and state tariffs. AT&T alleges in its counterclaims that Qwest entered into unlawful secret agreements with other carriers to give the other carriers special discounts on telecommunications services in contravention of Qwest's federal and state tariffs. On June 10, 2005, this court granted partial summary judgment in favor of AT&T (hereinafter "June 10, 2005

Order") on Qwest's claims for relief. Familiarity with the June 10, 2005 Order is assumed. In the June 10, 2005 Order, I determined, *inter alia*, "that there must be an exception to the filed-rate doctrine for good faith settlements of legal disputes over tariffs." (June 10, 2005 Order at 35.)

This matter is before the court on (1) Qwest's "Motion to Modify Order Pursuant to 28 U.S.C. § 1292(b); or in the Alternative for Reconsideration," filed June 24, 2005, and (2) Qwest's "Motion to Seal Documents," filed July 25, 2005. Jurisdiction is premised upon 28 U.S.C. §§ 1331 and 1337 (2004), and 47 U.S.C. § 207 (2004). In Qwest's motion to modify order or for reconsideration, Qwest requests that I (1) modify the June 10, 2005 Order to allow it to file a permissive interlocutory appeal, or, in the alternative, (2) reconsider the conclusion of the June 10, 2005 Order. I address these arguments in reverse order.

*1.*  *Motion to Reconsider*

Qwest moves for reconsideration of the summary judgment order with regards to the filed-tariff doctrine issue. (Mot. to Modify Order Pursuant to 28 U.S.C. § 1292(b); or in the Alternative For Recons. at 10–19 [filed June 24, 2005] [hereinafter "Qwest's Br."].) "'Although the Federal Rules of Civil Procedure do not explicitly provide for motions for reconsideration, these motions are [normally] accepted as the offspring of Fed. R. Civ. P. 59(e) which provides that a motion to alter or amend judgment may be entered within ten days after the entry of the judgment.'" *Gregg v. Am. Quasar Petroleum Co.*, 840 F. Supp. 1394, 1401 (D. Colo. 1991) (quoting *Equal Employment Comm'n v. Foothills Title Guar. Co.*, Civ.A. No. 90-A-361, 1991 WL 61012, at *3 [D. Colo. Apr. 12, 1991], *aff'd*, 956 F.2d 277 [10th Cir. 1992]). A motion to reconsider is only granted under limited circumstances.

> [A] motion to reconsider would be appropriate where, for example, the [c]ourt has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the [c]ourt by the parties, or has made an error not of reasoning but of apprehension. A further basis for a motion to reconsider would be a controlling or significant change in the law or facts since the submission of the issue to the [c]ourt.

*United States v. Ibarra*, 920 F.2d 702, 706 n.3 (10th Cir. 1990) (quoting *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 [E.D. Va. 1983]), *cert. granted and judgment vacated on other grounds*, 502 U.S. 1 (1991). "Such problems rarely arise and the motion to reconsider should be equally rare." *Above the Belt, Inc.*, 99 F.R.D. at 101. A motion to reconsider, moreover, is not an opportunity for parties to reargue issues that they did not prevail on in their initial motion and briefs. *Ibarra*, 920 F.2d at 706 n.3; *cf. Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991) (holding, with regards to a motion to reconsider under Rule 60(b), that "revisiting the issues already addressed 'is not the purpose of a motion to reconsider'").

Qwest's arguments in its motion to reconsider basically set forth the same arguments that it made in its earlier briefings. (*See* Qwest's Br. at 10–19.) Qwest has not set forth any proper ground, discussed above, for the court to revisit the analysis in the June 10, 2005 Order. I therefore deny Qwest's request for reconsideration.

### *2.   Interlocutory Appeal*

Qwest also requests that I modify the June 10, 2005 Order to allow it to file a permissive interlocutory appeal under 28 U.S.C. § 1292(b) regarding the issue of whether, in order to settle a dispute between two parties, the parties may execute a release of any claims that a party charged

a rate in contravention of the filed-tariff. (Qwest's Br. at 4–9.) 28 U.S.C. § 1292(b) provides that

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: Provided, however, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

28 U.S.C. § 1292(b). Thus, all three factors — controlling question of law, substantial ground for difference of opinion, and advancement of disposition of litigation — must be satisfied in order for a discretionary interlocutory appeal to be appropriate. 28 U.S.C. § 1292(b); *Ahrenholz v. Bd. of Trs. of Univ. of Illinois*, 219 F.3d 674, 675–76 (7th Cir. 2000) (Posner, J.). I address these three factors in turn.

    *a.*    *Controlling Question of Law*

The first factor in determining the propriety of a discretionary interlocutory appeal is whether the "order involves a controlling question of law." 28 U.S.C. § 1292(b). The appeal deals with a controlling question, as evident from the fact that district court decisions denying or granting motions for partial summary judgment have been repeatedly addressed under 28 U.S.C. § 1292(b) by the Tenth Circuit. *Chessin v. Keystone Resort Mgmt., Inc.*, 184 F.3d 1188, 1190 (10th Cir. 1999); *Hatfield v. Burlington N. R.R. Co.*, 64 F.3d 559, 559 (10th Cir. 1995); *Mitchell v. State Farm Fire & Cas. Co.*, 902 F.2d 790, 792 (10th Cir. 1990); *In re Wyoming Tight Sands*

*Antitrust Cases*, 866 F.2d 1286, 1289 (10th Cir. 1989). Moreover, as the Third Circuit has explained, "[a] controlling question of law must encompass at the very least every order which, if erroneous, would be reversible error on final appeal." *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir. 1974) (en banc). If the Tenth Circuit decides the issue regarding the release and the filed-tariff doctrine differently on final appeal, then the Tenth Circuit would reverse and remand the case. Thus, the issue is controlling.

Not only must the issue be controlling, but it must also involve a "question of law." 28 U.S.C. § 1292(b). A question of law should be "a pure question of law," not a question related to the existence of disputed material facts. *Ahrenholz*, 219 F.3d at 677. Here, the potential question for certification is whether, in order to settle a dispute between two parties, the parties may execute a release of any claims that a party charged a rate in contravention of the filed-tariff. This question does not deal with factual issues. Rather, it is a pure question of law. Accordingly, the issue upon which Qwest wishes to pursue an interlocutory appeal is a controlling question of law.

   *b.*  *Substantial Ground for Difference of Opinion*

The second factor in determining the propriety of a discretionary interlocutory appeal is whether "there is substantial ground for difference of opinion." 28 U.S.C. § 1292(b). As I noted in my order and memorandum of decision on June 10, 2005, "there is little precedent on th[e] issue," and the policy implications of either the result I reached or the result advocated by Qwest are troubling. (June 10, 2005 Order at 33–38.) Although, on the balance, legal precedent and policy rationales confirm the propriety of the reasoning and conclusions in the June 10, 2005 Order, I conclude that there is a substantial ground for difference of opinion on the issue. This

conclusion is due to (1) the nature of the issue, (2) the general lack of precedent, and (3) the policy implications of any approach. This factor, therefore, favors a discretionary interlocutory appeal.

### c.   *Advance the Ultimate Termination of Litigation*

The third factor in determining the propriety of a discretionary interlocutory appeal is whether "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). As one Circuit Court has described this factor, the question is whether a discretionary interlocutory appeal will "*speed up* the litigation." *Ahrenholz* 219 F.3d at 675 (emphasis in original).

As set forth below, I conclude that an interlocutory appeal may materially advance the ultimate termination of this litigation. This conclusion is demonstrated by the following hypothetical regarding future proceedings in this case. Assuming that (1) this case goes to trial and final judgment, (2) Qwest then appeals the June 10, 2005 Order, and (3) the Tenth Circuit reverses this court's determination on the release issue, then this court and the parties will need to retry significant portions of this case. In this hypothetical, the trial prior to appeal would not have resolved whether AT&T violated Qwest's state and federal tariffs prior to March 2004. Thus, assuming the Tenth Circuit were to reverse on the release issue, a second trial would probably be necessary. Moreover, the June 10, 2005 Order granted summary judgment in favor of AT&T on Qwest's fourth claim for relief, fraudulent concealment and misrepresentation, based upon the assumption that Qwest had released this claim for all events prior to March 2004. In the hypothetical, assuming that the Tenth Circuit reverses the release issue after final judgment, the second trial might also encompass the fraudulent concealment claim for events

prior to March 2004.[1]  Since an appeal of the release question is likely either now or after final judgment, the delays associated with the possibility of a second trial favors a determination that an interlocutory appeal may materially advance the ultimate termination of the litigation.[2]

Furthermore, as represented by counsel for both parties at a July 29, 2005 hearing on Qwest's motion to modify the June 10, 2005 Order, AT&T's counterclaims are interrelated to Qwest's claims.  As represented by Qwest's counsel, Qwest plans to invoke the same release provision as a defense to several of AT&T's counterclaims.[3]  Accordingly, the validity of this court's decision on the release issue in the June 10, 2005 Order may impact AT&T's

---

[1] I express no opinion in this Order and Memorandum of Decision regarding whether Qwest's fourth claim for relief would still fail as a matter of law if it included events prior to March 2004.

[2] In reaching this conclusion, I do not rely upon two of Qwest's arguments.  First, Qwest argues that a Tenth Circuit ruling on the issue would provide guidance for two other cases currently pending before other judges in this district. (Qwest's Br. at 9.)  One of these two cases, *Qwest Corp. v. AT&T Corp. et al.*, 03–cv–02084–PSF–CBS, has settled so a decision by the Tenth Circuit would not impact that case.  More importantly, while Qwest's argument may impact the factor of a controlling question of law, it does not demonstrate that an appeal would materially advance the ultimate termination of the present litigation.  *See Lorentz v. Westinghouse Elec. Corp.*, 472 F. Supp. 954, 956–57 (W.D. Pa. 1979).

Second, Qwest argues that if this court does not permit a discretionary interlocutory appeal, it will have to assert an extra exemption in the bill period closure agreement. (Qwest's Br. at 8–9.)  This argument is unpersuasive because (1) it does not appear to be a hardship for Qwest to do so, (2) Qwest would need to do so in any event while the case is before the Tenth Circuit, and (3) this does not impact the ultimate termination of the litigation.

[3] I express no opinion in this Order and Memorandum of Decision as to the merits of Qwest's argument as to whether AT&T also released its counterclaims.  Rather, I set forth Qwest's argument merely to illustrate that the release issue not only impacts Qwest's claims, but may also impact AT&T's counterclaims.

counterclaims as well as Qwest's claims. Thus, a decision by the Tenth Circuit will also materially advance the ultimate termination of AT&T's counterclaims.

For the reasons set forth above, all three 28 U.S.C. § 1292(b) factors have been satisfied. Accordingly, this court's determination in the June 10, 2005 Order — that in order to settle a dispute between two parties the parties may execute a release of any claims that a party charged a rate in contravention of the filed-tariff — involves a controlling question of law as to which there is substantial ground for difference of opinion and an immediate appeal from the order may materially advance the ultimate termination of the litigation. I therefore grant Qwest's motion to modify the June 10, 2005 Order to permit an interlocutory appeal. All proceedings and deadlines in this case, including discovery, should be stayed pending resolution of the interlocutory appeal in the Tenth Circuit. Furthermore, the clerk shall administratively close this case pending resolution of the interlocutory appeal in the Tenth Circuit.

### 3. *Conclusions*

Based on the foregoing it is therefore

ORDERED as follows:

1. This court's determination in the June 10, 2005 Order — that in order to settle a dispute between two parties the parties may execute a release of any claims that a party charged a rate in contravention of the filed-tariff — involves a controlling question of law as to which there is substantial ground for difference of opinion and an immediate appeal from the order may materially advance the ultimate termination of the litigation.

2. Qwest's Motion to Modify the June 10, 2005 Order or for Reconsideration (# 130) is GRANTED in part and DENIED in part.

3. Qwest's motion is GRANTED as to its request that the court modify the June 10, 2005 Order to permit an interlocutory appeal pursuant to 28 U.S.C. § 1292(b) on the question of whether, in order to settle a dispute between two parties, the parties may execute a release of any claims that a party charged a rate in contravention of the filed-tariff, addressed on pages 33 to 38 of the June 10, 2005 Order.

4. Qwest's motion is DENIED as to its request that this court reconsider the merits of the June 10, 2005 Order.

5. Qwest's Motion to Seal Documents is GRANTED.

6. All proceedings and deadlines, including discovery, is hereby STAYED.

7. The clerk is ordered to ADMINISTRATIVELY CLOSE this case until the Court of Appeals resolves this interlocutory appeal.

Dated this __4th__ day of August, 2005.

BY THE COURT:

s/Edward W. Nottingham
EDWARD W. NOTTINGHAM
United States District Judge